**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen M. Helton, | ) CIV 08-2300-PHX-NVW (MHB) |
| Petitioner, | ) **REPORT AND RECOMMENDATION** |
| vs. | ) |
| Charles L. Ryan, et al., | ) |
| Respondents. | ) |

TO THE HONORABLE NEIL V. WAKE, UNITED STATES DISTRICT JUDGE:

Petitioner Stephen M. Helton, who is confined in the Arizona State Prison Complex-Lewis, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. On December 23, 2008, the Court dismissed the Petition with leave to amend. On January 20, 2009, Petitioner filed an Amended Petition (Doc. #4). Respondents filed an Answer on June 11, 2009 (Doc. #11), and Petitioner filed a traverse on September 16, 2009 (Doc. #18).

**BACKGROUND**

On December 15, 2004, the State indicted Petitioner for: (i) Burglary in the Third Degree, a class 4 felony (Count 1); (ii) two counts of Robbery, both class 4 felonies (Counts 2 and 3); and (iii) two counts of Kidnapping, both class 2 felonies (Counts 4 and 5). (Doc. #11, Exh. 11.) The State alleged the following historical felony convictions: (i) Trespass in the First Degree, a class 6 felony (committed August 3, 1988; convicted October 14, 1988); (ii) Attempted Murder in the First Degree, a class two felony (committed July 8, 1989; convicted October 20, 1989); (iii) Kidnapping, a class 2 felony (committed July 8, 1989; convicted December 20, 1989); (iv) Armed Robbery, a class 2 felony (committed July 8,

1989; convicted December 20, 1989); and (v) Aggravated Assault, a class 5 felony (committed May 6, 1994; convicted June 23, 2000). (Doc. #11, Exh. 16.) The State also alleged other aggravating circumstances. (Doc. #11, Exh. 17.)

On or about January 7, 2005, Petitioner executed a Plea Agreement in which he agreed to plead guilty to: (i) one count of Robbery, a class 4 felony, with one prior felony conviction (Amended Count 2); and (ii) one count of Kidnapping, a class 2 felony with one prior felony conviction (Amended Count 4). (Doc. #11, Exh. 28.) The Plea Agreement advised Petitioner that: (i) Amended Count 2 carried a presumptive sentence of 4.5 years, a minimum sentence of 3.0 years (2.25 years if the Court finds "exceptional circumstances"), and a maximum sentence of 6.0 years (7.5 years if the Court finds "exceptional circumstances"); and (ii) Amended Count 4 carried a presumptive sentence of 9.25 years, a minimum sentence of 6.0 years (4.5 years if the Court finds "exceptional circumstances"), and a maximum sentence of 18.5 years (23.25 years if the Court finds "exceptional circumstances"). (Doc. #11, Exh. 28.)

The Plea Agreement contained the following stipulations: (i) "Defendant shall be sentenced to the Department of Corrections for no less than the presumptive term" for each of the above counts, with said sentences to run concurrently; (ii) "Defendant hereby waives and gives up any and all motions, defenses, objections, or requests which he has made or raised, or could assert hereafter, to the court's entry of judgment against him and imposition of a sentence upon him consistent with this agreement"; (iii) "[D]efendant consents to judicial factfinding by preponderance of the evidence as to any aspect or enhancement of sentence"; and (iv) "I have read and understand the provisions of pages one and two of this agreement. I have discussed the case and my constitutional rights with my lawyer. I understand that by pleading GUILTY I will be waiving and giving up my right to a determination of probable cause, to a trial by jury to determine guilt and to determine any fact used to impose a sentence within the range stated in paragraph one, to confront, cross-examine, compel the attendance of witnesses, to present evidence in my behalf, my right to

remain silent, my privilege against self-incrimination, presumption of innocence and right to appeal." (Doc. #11, Exh. 28.)

The State agreed to dismiss "Counts 1, 3, and 5" and the "[a]llegations of Defendant's remaining prior felony convictions." (Doc. #11, Exh. 28.)

On February 7, 2005, Petitioner appeared in court and entered a plea of guilty, pursuant to the Plea Agreement, to Amended Counts 2 and 4. (Doc. #11, Exh. 29.) Before doing so, the state court summarized the constitutional rights that Petitioner would be waiving by pleading guilty, and explained Petitioner's sentencing exposure, including the potential that Petitioner could receive aggravated sentences of "realistically" 6 years and 18.5 years on the two offenses. (Doc. #11, Exh. 54, attach. 3 at 4-8, 20, 29-33.) Petitioner informed the court that: (i) he had read the Plea Agreement in its entirety and understood it; (ii) he had reviewed the Plea Agreement with his attorney, and counsel had explained it to him and answered his questions; and (iii) he had no remaining questions pertaining to the agreement. (Doc. #11, Exh. 54, attach. 3 at 27-28.) The court specifically confirmed that Petitioner wished to give up "the right to have the jury be the fact finder for aggravating factors when it comes to sentencing." (Doc. #11, Exh. 54, attach. 3 at 33.)

On March 8, 2005, the state court sentenced Petitioner to concurrent sentences of 15 years' imprisonment on Amended Count 4 (aggravated) and 6 years' imprisonment on Amended Count 2 (aggravated), and dismissed Counts 1, 3, and 5. (Doc. #11, Exh. 37.) In explaining its decision to impose aggravated sentences, the court specifically noted, "you do have three prior felonies, and you were released from parole just five months before this event occurred." (Doc. #11, Exh. 54, attach. 1 at 13.)

On June 2, 2005, Petitioner filed a "Notice of Post-Conviction Relief; *Blakely v. Washington* Claim." (Doc. #11, Exh. 38.) The Notice asserted that Petitioner "was sentenced in violation of *Blakely* and [he is] entitled to *Blakely* relief," but provided no factual basis for his claim. (Doc. #11, Exh. 38.) The state court appointed counsel to represent Petitioner. (Doc. #11, Exh. 39.)

On December 16, 2005, Petitioner's appointed lawyer, Thomas Gorman, filed a Notice of Completion & Motion for Extension of Time to Permit Petitioner to File a Pro Per Petition. (Doc. #11, Exh. 46.) Mr. Gorman's Notice of Completion informed the court that, after corresponding with Petitioner, conducting a review and analysis of Petitioner's proposed claims, and reviewing a record of the proceedings, "[c]ounsel undersigned has found no grounds for Rule 32 relief and has no basis upon which to file a petition." (Doc. #11, Exh. 46.)

On March 1, 2006, Petitioner filed a *pro per* Petition for Post-Conviction Relief ("PCR"). (Doc. #11, Exh. 50.) Petitioner claimed entitlement to relief on nine grounds:

> PCR Claim 1: "The denial of the constitutional right to representation of a competent lawyer at every critical stage of the proceedings." (Doc. #11, Exh. 50.) This claim asserted sub-claims "A" through "K". (Doc. #11, Exh. 50 at 3-7.)
>
> PCR Claim 2: "The conviction or the sentence was in violation of the Constitution of the United States or of the State of Arizona." (Doc. #11, Exh. 50 at 7.) This claim appears to allege that, in aggravating Petitioner's sentence, the state court relied on facts that were not admitted to by Petitioner, in violation of Blakely v. Washington. (Doc. #11, Exh. 50 at 7-8.)
>
> PCR Claim 3: "Sentence imposed other than in accordance with the sentencing procedures established by rule and statute." (Doc. #11, Exh. 50 at 8.) This claim asserts that Petitioner's aggravated sentence violated both Blakely and Arizona law, because Petitioner "admitted to nothing" other than the charges to which he pled guilty and one prior felony conviction, and that "there was no factual basis outside of his admission to warrant any further aggravation of his sentence." (Doc. #11, Exh. 50 at 8.)
>
> PCR Claim 4: "The lack of jurisdiction of the Court which entered the conviction or sentence." (Doc. #11, Exh. 50 at 8-9.) This claim appears to allege that Petitioner's failure to admit facts used by the state court to aggravate Petitioner's sentence or to submit those facts to a jury "render[ed] the judge[']s sentence unconstitutional and illegal according to the sentencing guidelines established by the legislature of the State of Arizona." (Doc. #11, Exh. 50 at 9.)
>
> PCR Claim 5: "The abridgement of any other right guaranteed by the Constitution or the laws of the State of Arizona or the federal Constitution of the United States, including a right that was not recognized as existing at the time of the trial if retrospective application of that right is required." (Doc. #11, Exh. 50 at 9.) This claim is based on the allegation that, in support of Petitioner's aggravated sentence, the state court relied on "facts that were never stipulated in the plea agreement, and not found to be true by a jury for enhancement purposes." (Doc. #11, Exh. 50 at 9.)

PCR Claim 6: "Any other infringement of the right against self incrimination." (Doc. #11, Exh. 50 at 9.) This claim challenges Petitioner's aggravated sentence, arguing that the state court's reliance on facts that were not admitted to by Petitioner or found by a jury to aggravate Petitioner's sentence violated Petitioner's rights under <u>Blakely</u> and <u>Apprendi v. New Jersey</u>. (Doc. #11, Exh. 50 at 9-10.)

PCR Claim 7: "The existence of newly discovered material which requires the court to vacate the conviction or sentence." (Doc. #11, Exh. 50 at 10.) Petitioner's takes issue at having discovered in the "pre-sentence report" of the "victims failure to be located," which Petitioner alleges "most likely" would have caused him to refuse his plea agreement. (Doc. #11, Exh. 50 at 10.)

PCR Claim 8: "The unconstitutional suppression of evidence by the State." (Doc. #11, Exh. 50 at 10.) This claim argues that "the State should have notified the defendant and/or his attorney that the victims ... were not available for questioning and/or possible testimony at trial." (Doc. #11, Exh. 50 at 10-11.) Petitioner argued that this information was "very crucial" to the State's chances of success at trial, and without the testimony it would have been "highly unlikely" that the State could have convicted Petitioner. (Doc. #11, Exh. 50 at 10-11.)

PCR Claim 9: "The defendant demonstrates, by clear and convincing evidence, that the facts underlying the claim would be sufficient to [establish] that no reasonable trier of fact would have found defendant guilty of underlying [offenses] beyond a reasonable doubt." (Doc. #11, Exh. 50 at 11.) Petitioner attempted to meet the foregoing burden through various factual assertions and arguments. (Doc. #11, Exh. 50 at 11-12.)

The State's Response to Petitioner's PCR, filed April 17, 2006, argued that: (i) Petitioner had failed to present a colorable claim that he was denied effective assistance of counsel; (ii) Petitioner was not sentenced in violation of <u>Blakely v. Washington</u>; (iii) Petitioner has not presented the court with "newly discovered evidence"; (iv) the State did not suppress evidence in this case; and (v) Petitioner has failed to prove by clear and convincing evidence that no reasonable trier of fact would have found him guilty of the charged crimes. (Doc. #11, Exh. 54 at 3-11.) Petitioner filed a reply on May 22, 2006. (Doc. #11, Exh. 57.)

On June 6, 2006, the state court denied Petitioner's PCR on the merits as follows:

a. Ineffective assistance of counsel: The court held that Petitioner's claims of ineffective assistance were based on "unsubstantiated allegations," and failed to meet either prong of <u>Strickland v. Washington</u>. (Doc. #11, Exh. 59.)

b. <u>Blakely v. Washington</u>: The court held that Petitioner's aggravated sentence did not violate <u>Blakely</u> because the basis of the aggravation (Petitioner's prior convictions) was "*Blakely*-exempt." (Doc. #11, Exh. 59.)

c. Newly discovered evidence: In response to Petitioner's claim that his discovery that "the victims were unavailable at trial" constituted "newly discovered evidence," the court held: (i) Petitioner failed to meet his burden of establishing a claim for newly-discovered evidence set forth in State v. Nordstrom, 25 P.3d 707 (Ariz. 2001); and (ii) "The inability of the probation officer to contact the victims prior to preparing the pre-sentence report does not constitute newly discovered evidence." (Doc. #11, Exh. 59.)

d. Suppression of evidence: The court rejected Petitioner's claim that the State "unconstitutionally suppressed" evidence by "failing to notify him that the victims were unavailable," stating: "Defendant has failed to prove that the victims were unavailable or that the State acted inappropriately in any disclosure or lack of disclosure." (Doc. #11, Exh. 59.)

e. Claim that "no reasonable fact finder would have found Defendant guilty of the underlying offense": The court held: "Defendant's burden for this theory of relief is proof by clear and convincing evidence. See Rule 32.1(h), Ariz. R. Crim. P. Defendant fails to support this theory with any facts, let alone facts that prove it by clear and convincing evidence. Defendant's argument that the evidence obtained by the police was questionable because of the means of gathering it is insufficient to support this claim." (Doc. #11, Exh. 59.)

On July 7, 2006, Petitioner filed a Petition for Review to the Arizona Court of Appeals. (Doc. #11, Exh. A.) Petitioner's petition was summarily denied on June 19, 2007. (Doc. #11, Exh. B.) On September 5, 2007, Petitioner filed a Petition for Review to the Arizona Supreme Court. (Doc. #11, Exh. C.) The Arizona Supreme Court summarily denied the petition on January 3, 2008. (Doc. #11, Exh. D.)

On January 20, 2009, Petitioner filed the instant Amended Petition for Writ of Habeas Corpus (Doc. #4). Petitioner raises seven grounds for relief:

Ground One: Petitioner's Fifth and Fourteenth Amendment rights were violated when the state court erred by failing to grant an evidentiary hearing on the issue of defense counsel's unethical conduct (Doc. #4 at 6);

Ground Two: Petitioner's Sixth Amendment right to effective assistance of counsel was violated by defense counsel's unethical actions (Doc. #4 at 7);

Ground Three: Petitioner's defense counsel was ineffective in violation of the Sixth Amendment because he or she met with Petitioner only once (Doc. #4 at 8);

Ground Four: Defense counsel failed to consult with Petitioner on the state's plea offer, in violation of Petitioner's Sixth Amendment right to effective assistance of counsel (Doc. #4 at 9);

Ground Five: Defense counsel failed to present mitigation evidence to the state court, in violation of Petitioner's Sixth Amendment right to effective assistance of counsel (Doc. #4 at 9A);

Ground Six: Defense counsel failed to request psychological evaluation for Petitioner, in violation of Petitioner's Sixth Amendment right to effective assistance of counsel (Doc. #4 at 9B); and

Ground Seven: Petitioner's Fifth and Fourteenth Amendment due process rights were violated because he was not given sufficient time to review the presentence report (Doc. #4 at 9C).

Respondents filed an Answer on June 11, 2009 (Doc. #11), and Petitioner filed a traverse on September 16, 2009 (Doc. #15).

## DISCUSSION

In their Answer, Respondents contend: Ground One fails to state a basis for federal habeas relief; Ground Seven is procedurally defaulted; and the remaining claims fail on the merits. As such, Respondents request that the Court deny and dismiss Petitioner's Amended Petition with prejudice.

**A.    Ground One**

In Ground One, Petitioner asserts that his Fifth and Fourteenth Amendment rights were violated when the state court erred by failing to grant an evidentiary hearing on the issue of defense counsel's unethical conduct in "authoring a falsehood." Despite Petitioner's reference to alleged due process violations, the Court's review of Petitioner's claim in Ground One reveals that Petitioner is only asserting a violation of procedure used by the state court to resolve one of the issues set forth in his PCR – the state court's failure to hold an evidentiary hearing. As such, Ground One fails to constitute a basis for federal habeas relief.

The Court can grant habeas relief "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). This includes a trial court's evidentiary rulings based upon state law matters unless admission of the evidence was so prejudicial that it offends due process. See id.; Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991). Additionally, a petitioner cannot "transform a state-law issue into a federal one

merely by asserting a violation of due process." <u>Langford v. Day</u>, 110 F.3d 1380, 1389 (9th Cir. 1996), <u>cert. denied</u>, 522 U.S. 881 (1997); <u>see</u> <u>Engle v. Isaac</u>, 456 U.S. 107, 119-21 (1982) ("While they attempt to cast their first claim in constitutional terms, we believe that this claim does no more than suggest that the instructions at respondents' trials may have violated state law."). Accordingly, the Court will recommend that Petitioner's claim as asserted in Ground One be denied.

**B.     Ground Seven**

In Ground Seven, Petitioner alleges that his Fifth and Fourteenth Amendment due process rights were violated because he was not given sufficient time to review the presentence report. Respondents claim that Ground Seven is procedurally defaulted as it was not presented to the state court.

A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court. <u>See</u> 28 U.S.C. § 2254(b)(1) and (c); <u>Duncan v. Henry</u>, 513 U.S. 364, 365-66 (1995); <u>McQueary v. Blodgett</u>, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. <u>See</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 839-46 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. <u>See</u> <u>Swoopes v. Sublett</u>, 196 F.3d 1008, 1010 (9th Cir. 1999); <u>Roettgen v. Copeland</u>, 33 F.3d 36, 38 (9th Cir. 1994).

Proper exhaustion requires a petitioner to have "fairly presented" to the state courts the exact federal claim he raises on habeas by describing the operative facts and federal legal theory upon which the claim is based. <u>See, e.g.</u>, <u>Picard v. Connor</u>, 404 U.S. 270, 275-78 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). A claim is only "fairly presented" to the state courts when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim under the United States Constitution." <u>Shumway v. Payne</u>, 223 F.3d 982, 987 (9th Cir. 2000) (quotations omitted); <u>see</u> <u>Johnson v. Zenon</u>, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner

fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

A "general appeal to a constitutional guarantee," such as due process, is insufficient to achieve fair presentation. Shumway, 223 F.3d at 987 (quoting Gray v. Netherland, 518 U.S. 152, 163 (1996)); see Castillo v. McFadden, 399 F.3d 993, 1003 (9th Cir. 2005) ("Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory."). Similarly, a federal claim is not exhausted merely because its factual basis was presented to the state courts on state law grounds – a "mere similarity between a claim of state and federal error is insufficient to establish exhaustion." Shumway, 223 F.3d at 988 (quotations omitted); see Picard, 404 U.S. at 275-77.

Even when a claim's federal basis is "self-evident," or the claim would have been decided on the same considerations under state or federal law, a petitioner must still present the federal claim to the state courts explicitly, "either by citing federal law or the decisions of federal courts." Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000) (quotations omitted), amended by 247 F.3d 904 (9th Cir. 2001); see Baldwin v. Reese, 541 U.S. 27, 32 (2004) (claim not fairly presented when state court "must read beyond a petition or a brief ... that does not alert it to the presence of a federal claim" to discover implicit federal claim).

A procedural bar may be applied to unexhausted claims where state procedural rules make a return to state court futile. See Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (claims are barred from habeas review when not first raised before state courts and those courts "would now find the claims procedurally barred"); Franklin v. Johnson, 290 F.3d 1223, 1230-31 (9th Cir. 2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies only when a state court has been presented with the federal claim,' but declined to reach the issue for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally barred.'") (quoting Harris v. Reed, 489 U.S. 255, 263 n.9 (1989)).

In Arizona, claims not previously presented to the state courts via either direct appeal or collateral review are generally barred from federal review because an attempt to return to

state court to present them is futile unless the claims fit in a narrow category of claims for which a successive petition is permitted. See Ariz.R.Crim.P. 32.1(d)-(h) & 32.2(a) (precluding claims not raised on appeal or in prior petitions for post-conviction relief, except for narrow exceptions); Ariz.R.Crim.P. 32.4 (time bar). Because Arizona's preclusion rule (Rule 32.2(a)) is both "independent" and "adequate," either its specific application to a claim by an Arizona court, or its operation to preclude a return to state court to exhaust a claim, will procedurally bar subsequent review of the merits of that claim by a federal habeas court. See Stewart v. Smith, 536 U.S. 856, 860 (2002) (determinations made under Arizona's procedural default rule are "independent" of federal law); Smith v. Stewart, 241 F.3d 1191, 1195 n.2 (9th Cir. 2001) ("We have held that Arizona's procedural default rule is regularly followed ["adequate"] in several cases.") (citations omitted), reversed on other grounds, Stewart, 536 U.S. 856 (2002); see also Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir. 1998) (rejecting argument that Arizona courts have not "strictly or regularly followed" Rule 32 of Arizona Rules of Criminal Procedure); State v. Mata, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and preclusion rules strictly applied in post-conviction proceedings).

As the Court has indicated, Ground Seven states that Petitioner was denied his right to due process of law under the Fifth and Fourteenth Amendments "by failure to allot sufficient time for defendant to read, review, and challenge all material included in the presentencing report." In support of this claim, Petitioner alleges: "At sentencing defendant was for the first and only time presented with the presentence report to the Court, and given less than five minutes to read, review this substantial report with a view to ensuring its factual accuracy and challenging any and all possible errors that could be of prejudice to defendant."

Although PCR Claim 1(I) complained about the time Petitioner was given to review the presentence report, Petitioner framed the claim in terms of alleged ineffective assistance of counsel. Here, the claim is presented solely in terms of an alleged denial of due process under the Fifth and Fourteenth Amendments. Thus, although both claims assert Petitioner's dissatisfaction with the time he had to review the presentencing report, the state court was

never "fairly presented" with Ground Seven's contention that the time allotted for him to review the report somehow violated his right to due process of law. See Beaty v. Stewart, 303 F.3d 975, 989-90 (9th Cir. 2002) (habeas petitioner did not fairly present conflict-of-interest Sixth Amendment claim to Arizona state courts because he presented the federal court with a different conflict than the conflict of interest claim raised in state court); Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998) ("This Circuit has held that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court."); Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996) ("A claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition."). Petitioner therefore failed to fairly present Ground Three as a federal claim in state court and cannot now return to state court and properly exhaust Ground Seven as a federal claim. See Ariz.R.Crim.P. 32.2 and 32.4(a); Ortiz, 149 F.3d at 931-32; Mata, 916 P.2d at 1050-52.

The federal court will not consider the merits of a procedurally defaulted claim unless a petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. See Schlup v. Delo, 513 U.S. 298, 321 (1995); Coleman, 501 U.S. at 750-51; Murray v. Carrier, 477 U.S. 478, 495-96 (1986). Pursuant to the "cause and prejudice" test, a petitioner must point to some external cause that prevented him from following the procedural rules of the state court and fairly presenting his claim. "A showing of cause must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [the prisoner's] efforts to comply with the State's procedural rule. Thus, cause is an external impediment such as government interference or reasonable unavailability of a claim's factual basis." Robinson v. Ignacio, 360 F.3d 1044, 1052 (9th Cir. 2004) (citations and internal quotations omitted). Ignorance of the State's procedural rules or other forms of general inadvertence or lack of legal training and a petitioner's mental condition do not constitute legally cognizable "cause" for a petitioner's failure to fairly present his claim. Regarding the "miscarriage of justice," the

Supreme Court has made clear that a fundamental miscarriage of justice exists when a Constitutional violation has resulted in the conviction of one who is actually innocent. See Murray, 477 U.S. at 495-96.

In his traverse, Petitioner appears to address the merits of his claims and recite the arguments made in his habeas petition. (Doc. #18.) To the extent, however, Petitioner attempts to assert that his *pro per* status excuses his failure to properly present his claims, the Court is not persuaded. The law is well-established that a defendant's *pro per* status and lack of legal proficiency do not establish "cause" for his failure to present a federal claim to a state court. See, e.g., Tacho v. Martinez, 862 F.2d 1376, 1381 (9th Cir. 1988); Hughes v. Idaho State Board of Corrections, 800 F.2d 905, 909 (9th Cir. 1986).

Accordingly, Ground Seven in Petitioner's habeas petition is procedurally defaulted, and Petitioner has not established cause for his failure to raise his claims in state court, actual prejudice, or demonstrated that a miscarriage of justice would result if this issue is not addressed. Thus, the Court will recommend that this claim be denied.

**C.    Grounds Two through Six – Merits Analysis**

Pursuant to the AEDPA[1] , a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ... ." Robinson, 360 F.3d at 1055.

A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases,"

---

[1]  Antiterrorism and Effective Death Penalty Act of 1996.

or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 404-05. "A state court's decision can involve an 'unreasonable application' of Federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

In Grounds Two through Six, Petitioner claims that his Sixth Amendment right to effective assistance of counsel was violated for various reasons. The two-prong test for establishing ineffective assistance of counsel was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In order to prevail on an ineffective assistance claim, a convicted defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 687-88.

Regarding the performance prong, a reviewing court engages a strong presumption that counsel rendered adequate assistance, and exercised reasonable professional judgment in making decisions. See id. at 690. "[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Bonin v. Calderon, 59 F.3d 815, 833 (9th Cir. 1995) (quoting Strickland, 466 U.S. at 689). Moreover, review of counsel's performance under Strickland is "extremely limited": "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." Coleman v. Calderon, 150 F.3d 1105, 1113 (9th Cir.), judgment rev'd on other grounds, 525 U.S. 141 (1998). Thus, a court "must judge the reasonableness of counsel's

challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690.

If the prisoner is able to satisfy the performance prong, he must also establish prejudice. See id. at 691-92; see also Smith v. Robbins, 528 U.S. 259, 285 (2000) (burden is on defendant to show prejudice). To establish prejudice, a prisoner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. A court need not determine whether counsel's performance was deficient before examining whether prejudice resulted from the alleged deficiencies. See Robbins, 528 U.S. at 286 n.14. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. (quoting Strickland, 466 U.S. at 697).

The two-prong test set forth in Strickland also applies to challenges to guilty pleas based on ineffective assistance of counsel. See Hill v. Lockhart, 474 U.S. 52, 58 (1985). A defendant who pleads guilty based on the advice of counsel may attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel fell below the level of competence demanded of attorneys in criminal cases. See id. at 56. To satisfy the second prong of the Strickland test, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

In reviewing a state court's resolution of an ineffective assistance of counsel claim, the Court considers whether the state court applied Strickland unreasonably:

> For [a petitioner] to succeed [on an ineffective assistance of counsel claim], ... he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, he must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner.

Bell v. Cone, 535 U.S. 685, 698-99 (2002) (citations omitted); see also Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) ("Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied Strickland incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner.") (citations omitted).

Petitioner appears to have presented Grounds Two through Six to the state court and the Court of Appeals in his PCR proceeding. In the last reasoned state court decision addressing his ineffective assistance of counsel claims, the state court rejected them in a succinct minute entry stating in pertinent part:

> A claim of ineffective assistance of counsel requires a two-pronged test: (1) that counsel's performance fell below objectively reasonable standards, and (2) that the deficient performance prejudiced the Defendant. *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Nash*, 143 Ariz. 392, 694 P.2d 222 (1985). Defendant's Petition fails to meet the requirements of either prong. Defendant's Petition fails to show that counsel's performance fell below the objective standard of reasonable representation measured by the prevailing norms. Defendant's Petition also fails to show that there is a reasonable probability that but-for counsel's alleged errors, the result of the proceeding would have been different, as is required. *Nash*, 143 Ariz. 398, 694 P.2d 228. Defendant's position contains unsubstantiated allegations that he received ineffective assistance of counsel. Defendant's Petition fails to prove prejudice.

(Doc. #11, Exh. 59.)

### 1.     Ground Two

In Ground Two of his habeas petition, Petitioner argues that his Sixth Amendment right to effective assistance of counsel was violated by defense counsel's unethical actions. Specifically, Petitioner states that his rights were violated by the "unethical/unprofessional conduct of defense counsel in authoring a falsehood in writing concerning the acts of counsel's representation." This, Petitioner alleges, occurred when, "[i]n an e-mail reply to one Michael Pierce [an alleged friend of Petitioner] authorized by [Petitioner] to communicate with defense counsel," defense counsel falsely wrote, "I have filed the motion to reduce bond, and the court has received it."

The Court finds that even if counsel's e-mail to Mr. Pierce was incorrect, Ground Two has no merit. The fact that counsel may have inaccurately informed Petitioner's friend that counsel filed a "motion to reduce bond" does not establish that counsel rendered unreasonable assistance to Petitioner. Nor has Petitioner satisfied Strickland's second prong, since he has neither claimed nor demonstrated that, but for counsel's alleged e-mail, "there is a reasonable probability that … [Petitioner] would not have pleaded guilty and would have insisted on going to trial." Doe v. Woodford, 508 F.3d 563, 568 (9th Cir. 2007) (quoting Hill, 474 U.S. at 59).

Accordingly, the Court finds that the state court did not unreasonably apply Strickland in rejecting this claim. The Court will recommend that Petitioner's claim as alleged in Ground Two be denied.

## 2. Ground Three

Petitioner asserts in Ground Three that his defense counsel was ineffective because she met with Petitioner only once. Petitioner specifically states that his rights were violated "by defense counsel's failure to meet with defendant beyond that of a 'pro forma' encounter, for the purpose of obtaining facts/information and seeking defendant[']s recollections and perspectives in order to construct an effective strategy of defense." In support of this claim, Petitioner alleges:

> Defendant had only ONE consultation with defense counsel outside of any extremely brief encounters within the Courtroom. This one and only consultation was a duration of less than ten minutes. Counsel never attempted to determine the facts of the case from defendant[']s perspective. Instead counsel relied solely on the facts [proffered] by the State as the only basis of pursuing a defense strategy/theory. Counsel further failed to conduct any kind of substantial preliminary investigation of the case with a view to an effective strategy of defense.

Ground Three fails in several respects. Petitioner elected to plead guilty, thereby eliminating the need to prepare for trial. In addition, the Sixth Amendment does not entitle a defendant to a "meaningful relationship" with his appointed lawyer. See Morris v. Slappy, 461 U.S. 1, 13-14 (1983) ("[W]e reject the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel."). Nor does Petitioner's dissatisfaction

with the "face time" he had with counsel before pleading guilty establish that counsel's performance fell below an "objective standard of reasonableness," Strickland, 466 U.S. at 687-88, or that, if counsel had devoted more time, "there is a reasonable probability that ... [Petitioner] would not have pleaded guilty and would have insisted on going to trial." Woodford, 508 F.3d at 568 (quoting Hill, 474 U.S. at 59).

Petitioner's unsupported allegations that his lawyer did not attempt to determine the facts "from defendant[']s perspective" and "failed to conduct any kind of substantial preliminary investigation of the case with a view to an effective strategy of defense," are further unavailing, because said allegations are unaccompanied by any proof that such investigation, if undertaken, would have led to a different result, either through exculpatory evidence or a successful defense.

As explained by the Supreme Court in Hill:

> [W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that the discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

474 U.S. at 59. Here, Petitioner does not maintain that he is innocent of the charges to which he plead guilty, or even that a plausible defense to those charges exists. See United States v. Sutton, 794 F.2d 1415, 1422 (9th Cir. 1986) ("Moreover, [petitioner] does not maintain on appeal that he is innocent of the charges in the indictment or that a plausible defense to those charges exists."). In the absence of such proof, Petitioner cannot establish prejudice.

Accordingly, the Court finds that the state court did not unreasonably apply Strickland in rejecting Petitioner's claim as asserted in Ground Three. The Court will recommend that this claim be denied.

**3.    Ground Four**

In Ground Four, Petitioner contends that counsel failed to consult with Petitioner on the State's plea offer, in violation of Petitioner's Sixth Amendment right to effective

assistance of counsel. Petitioner also states that "[c]ounsel further failed to pursue an active course of negotiations on such a plea offer as was the expressed intention of defendant."

The state court's rejection of Petitioner's claim as alleged in Ground Four was neither contrary to, nor did it involve an unreasonable application of <u>Strickland</u>. The Court finds that Petitioner's general assertion that his counsel did not pursue an "active course" of plea negotiations does not establish that Petitioner's guilty plea was not voluntary and intelligent. The record shows that counsel did secure a plea offer that was acceptable to Petitioner, as demonstrated by the fact that Petitioner signed the Plea Agreement and plead guilty. Petitioner fails to offer any specifics concerning what actions should have been taken by counsel, or demonstrate that such actions would have led to an improved "deal." In <u>Cummings v. Sirmons</u>, 506 F.3d 1211 (10th Cir. 2007), the court rejected a similar claim stating:

> [Petitioner] further asserted that his "[t]rial counsel failed to effectively negotiate with the prosecution for a better plea offer, because counsel failed to be adequately prepared in order to effectively marshal facts in support of a better plea offer." ... The problem with these assertions is that [petitioner] fails to identify what "adequate and appropriate advice" his trial counsel allegedly should have given him, and likewise fails to identify what additional preparation trial counsel should have engaged in or what facts trial counsel should have "marshaled" "in support of a better plea offer." Accordingly, he has failed to establish that his appellate counsel's performance in this regard was constitutionally deficient, or that he was prejudiced thereby.

<u>Id.</u> at 1228. Similarly, in <u>United States v. Boone</u>, 62 F.3d 323 (10th Cir. 1995), the court rejected an ineffective assistance claim based on counsel's failure to negotiate a plea, because the defendant failed to establish that but for counsel's alleged ineffective performance, defendant would have received a lesser sentence:

> Even if we assume, without deciding, that counsel's failure to negotiate with the prosecutor amounted to deficient performance under *Strickland*, [defendant] fails to satisfy the prejudice requirement. Without any showing that the prosecution was willing to enter plea negotiations with [defendant's] counsel, or that such plea would have been acceptable to the court, or that the resulting sentence would have been different than that imposed under the Sentencing Guidelines, all that the Defendant urges is speculation, not a reasonable probability that the outcome would have been different. Accordingly, he cannot establish prejudice.

<u>Id.</u> at 327.

Moreover, Petitioner's contention that counsel did not consult with him "so as to ensure that he was able to understand and make a full, and knowing decision affecting same" also fails.  Petitioner does not establish what counsel failed to explain, or what Petitioner did not understand.  Indeed, Petitioner's allegation that counsel did not consult with him concerning the terms and conditions of his Plea Agreement is contradicted by Petitioner's statements to the state court at the change of plea proceeding, wherein he unequivocally informed the court that he had reviewed the Plea Agreement with his attorney, that counsel had explained it to him and answered his questions, and that Petitioner had no remaining questions.  (Doc. #11, Exh. 54, attach. 3 at 27-28.)  Further, any suggestion that Petitioner suffered prejudice is contradicted by the facts that (i) in open court, the state court reviewed with Petitioner the constitutional rights that Petitioner would be waiving by pleading guilty, as well as, Petitioner's sentencing exposure (Doc. #11, Exh. 54, attach 3 at 4-8, 20, 29-33); and (ii) Petitioner informed the court that he had read the Plea Agreement in its entirety and understood it (Doc. #11, Exh. 54, attach 3 at 27-28).

Even where defense counsel has inaccurately predicted the sentence that a defendant will receive upon pleading guilty (which Petitioner does not allege here), the Ninth Circuit has soundly rejected habeas claims on the grounds that, having been informed of the true consequences of the plea in open court, a defendant cannot establish prejudice.  See, e.g., Womack v. Del Papa, 497 F.3d 998, 1003 (9th Cir. 2007) ("Even if [petitioner's] counsel's performance were somehow deemed ineffective, [petitioner] was not prejudiced by his counsel's prediction because the plea agreement and the state district court's plea canvass alerted [petitioner] to the potential consequences of his guilty plea."); Weaver v. Palmateer, 455 F.3d 958, 968 (9th Cir. 2006) ("[Petitioner] thus 'cannot establish prejudice from any bad advice he received, because the trial judge told him point blank that he could not harbor any particular expectations about the sentence.'") (quoting United States v. Rice, 116 F.3d 267, 269 (7th Cir. 1997)); Doganiere v. United States, 914 F.2d 165, 168 (9th Cir. 1990) (holding that petitioner "suffered no prejudice from his attorney's prediction because, prior to

accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court").

Accordingly, the Court finds that the state court did not unreasonably apply <u>Strickland</u> in rejecting Petitioner's claim as asserted in Ground Four. The Court will recommend that this claim be denied.

### 4. Ground Five

Petitioner alleges in Ground Five that his counsel failed to present mitigating evidence to the state court, in violation of Petitioner's Sixth Amendment right to effective assistance of counsel. In support of this claim, Petitioner states, "[c]ontrary to defendant[']s expressed desire, counsel made no attempt(s) to plead for defendant in terms of mitigation. Even though counsel was presented with possible factors of mitigation."

The record, however, demonstrates that counsel presented both mitigating evidence and argument at sentencing, including calling two witnesses (Michael Pierce and Jennifer Beard), and arguing that Petitioner had owned up to his "severe drug problem," and "is ready to deal with that," and that Petitioner's offenses did not involve use of a weapon or dangerous instrument, and that "the items taken only totaled $34.00." (Doc. #11, Exh. 54, attach. 1; <u>see</u> <u>also</u> Doc. #11, Exh. 34 [supporting letters filed by counsel on Petitioner's behalf].) Furthermore, although Petitioner suggests that counsel "was presented with [other] possible factors of mitigation," he fails to disclose any of those "factors," or demonstrate how the factors could overcome the aggravating factors found by the court.

"There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Weaver</u>, 455 F.3d at 965 n.9. Having failed to demonstrate a "reasonable probability" that, but for counsel's alleged unprofessional errors, "the result of the proceeding would have been different," <u>Strickland</u>, 466 U.S. at 694, Petitioner's claim fails.

Accordingly, the Court finds that the state court did not unreasonably apply <u>Strickland</u>. The Court will recommend that Petitioner's claim as asserted in Ground Five be denied.

### 5. Ground Six

Petitioner asserts in Ground Six that counsel failed to request a psychological evaluation, in violation of Petitioner's Sixth Amendment right to effective assistance of counsel. Petitioner contends that he requested that his lawyer arrange "a battery of psychological evaluations/[assessments] for the purpose of offering to the Court all mitigating factors," but that "[c]ounsel's only response to defendant's request was to advise defendant to 'talk' with the County Jail Medical Unit."

First, the Court notes that in PCR Claim 1(g), Petitioner alleged that, when he requested a psychological evaluation for mitigation purposes, counsel advised him "to 'put in a request' with the medical unit of the Maricopa county jail to be assessed by a psychologist, and that [counsel] would be able to then request medical records for the Court." Petitioner, however, does not allege and fails to demonstrate that he followed through with counsel's instructions.

Additionally, similar to Petitioner's other grounds for relief, Petitioner offers nothing to establish that the results of such an evaluation would have been mitigating, much less that the results would have counterbalanced the aggravating evidence presented by the State and found by the court. As to this specific claim, Petitioner must demonstrate not only that counsel's alleged failure to secure a psychological evaluation fell below an "objective standard of reasonableness" and "outside the wide range of professionally competent assistance," but that if counsel had secured such an evaluation, there is "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," Strickland, 466 U.S. at 687-89, 694. Petitioner's claim fails in all respects since: (i) appointed counsel's decisions regarding a psychological evaluation was not "objectively unreasonable," particularly given the undisputed aggravating facts of Petitioner's prior convictions; and (ii) Petitioner has failed to establish that a "battery of psychological evaluations/[assessments]" would have lead to a different result.

Accordingly, the Court finds that the state court did not unreasonably apply Strickland. The Court will recommend that Petitioner's claim as asserted in Ground Six be denied.

## CONCLUSION

Having determined that Ground One fails to state a basis for federal habeas relief; Ground Seven is procedurally defaulted; and the remaining claims fail on the merits, the Court will recommend that Petitioner's Amended Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #4) be **DENIED** and **DISMISSED WITH PREJUDICE**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(b) and 72. Thereafter, the parties have ten days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. See Fed.R.Civ.P. 72.

DATED this 30th day of December, 2009.

*Michelle H. Burns*

Michelle H. Burns
United States Magistrate Judge